**Percy STAMPS, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 84–CV–2582–DT.

United States District Court, E.D. Michigan, S.D.

Sept. 26, 1985.

Kenneth F. Laritz, Warren, Mich., for plaintiff.

Ellen Ritteman, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Plaintiff has sought judicial review, pursuant to the Social Security Act, 42 U.S.C. § 405(g), of a final decision of the Secretary of Health and Human Services denying disability benefits. Plaintiff filed an application for disability benefits on March 7, 1983, claiming that he became disabled in June 1981, due to a heart condition, a nervous condition, arthritis in the lower back, diabetes, poor hearing, and high blood pressure. The claim was denied initially and upon reconsideration. A *de novo* hearing was held before an administrative law judge (ALJ) on December 20, 1983. In a decision dated March 22, 1984, the ALJ

found that Plaintiff was not disabled within the meaning of the Social Security Act § 223(d)(1) 42 U.S.C. § 423(d)(1). The Appeals Council denied Plaintiff's request for review on May 21, 1984, and the ALJ's decision thereby became the final decision of the Secretary.

Plaintiff has filed this civil action seeking review of the Secretary's decision and the matter is presently before the Court on Plaintiff's motion for summary judgment. The Secretary has not filed a cross-motion in this matter. Plaintiff's motion was referred to a magistrate on May 30, 1984 for report and recommendation. On June 17, 1985, Magistrate Binder issued his report and recommended that Plaintiff's motion be denied. Plaintiff filed timely objections with this Court, requiring the Court to make a *de novo* review of those portions of the report to which Plaintiff objected. *United States v. Shami,* 754 F.2d 670 (6th Cir.1985); *Hill v. Duriron Co., Inc.,* 656 F.2d 1208, 1214 (6th Cir.1981).

In evaluating Plaintiff's objections, this Court's scope of review is limited to determining whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *LeMaster v. Weinberger,* 533 F.2d 337 (6th Cir.1976). The United States Supreme Court has defined substantial evidence as " 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The Sixth Circuit has also stated that "[s]ubstantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health and Human Services,* 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera*

*Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Thus, a reviewing court must evaluate the record as a whole and uphold the Secretary's decision only if it is supported by substantial evidence on the record. *Beavers,* 577 F.2d at 387; *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978).

In the present case, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act § 223(d)(1). Disability is defined in part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). A person is disabled within the meaning of the Act only if, considering his health, age, education and work experience, he is unable to engage in any kind of substantial gainful work which exists in the national economy, regardless of whether the claimant can actually obtain work in the area in which he lives, *Id.* § 423(d)(2); 20 C.F.R. § 404.1505.

The burden of proof rests on the claimant to establish entitlement to disability benefits. *Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Ragan v. Finch,* 435 F.2d 239, 241 (6th Cir.1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971). In order to sustain his burden, a claimant must establish that he is not engaged in substantial gainful activity;[1] that he suffers from a severe impairment;[2] and that the period of disability meets the Act's duration requirement.[3] Assuming that the claimant meets this burden, he must then prove that his impairment prevents him from performing his past relevant work.[4] In determining whether a claimant is able to perform past relevant work, the Secretary evaluates the claimant's residual func-

1. *See* 20 C.F.R. § 404.1520(a).

2. *See id.* §§ 404.1520(c), .1521.

3. The impairment must be one which "has or can be expected to last for a continuous period of not less than 12 months." *Id.* § 404.1509.

4. *See id.* § 404.1520(e).

tional capacity. A claimant's "residual functional capacity" is his capacity to perform work despite his limitations. *See* 20 C.F.R. § 404.1545(a). If the claimant establishes that he does *not* have a residual functional capacity to perform past relevant work, he has sustained his burden of proving a *prima facie* case.[5] *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *see* 20 C.F.R. § 404.1520(e).

Once the claimant has made a *prima facie* showing, the burden shifts to the Secretary to demonstrate that other work exists in the national economy which, considering the claimant's age, education, work experience and residual functional capacity, the claimant can perform. *Allen v. Califano, supra; see* 20 C.F.R. § 404.-1560–.1568. The Secretary generally relies on published medical-vocational guidelines (grids) to determine whether such work exists. *See* 20 C.F.R. § 404.1569; *id.* pt. 404, subpt. P, app. 2. The medical-vocational guidelines direct a finding on the issue of disability based on an evaluation of four vocational factors: age, education, work experience and physical exertional capacity. *Id.* Thus, four findings of fact underlie the application of the grids, and each of the four findings "must be supported by substantial evidence before the disability determination based on the grid should be upheld." *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

Plaintiff was born on April 29, 1929 (Tr. 32). He has an eighth grade education and took auto mechanics training in 1955 under the GI Bill (Tr. 32, 33). Plaintiff was last employed in June, 1981 (Tr. 33). At that time, he was a working foreman for a steel company (Tr. 33–34). His duties included supervising up to five men, preparing time cards, unloading 20–50 pound drums from trucks, counting the number of trucks and drums, and cleaning the trucks once they were unloaded (Tr. 34). In addition, Plaintiff indicated that he drove a hi-lo truck but his experience was infrequent, occurring twice a month (Tr. 49–50). He held that position from 1971 until 1981 (Tr. 35). His previous job was at a stone-cutting company, where he was employed from 1965 until 1971 (Tr. 35). He was employed primarily as a common laborer, although he occasionally drove delivery trucks, cut stone and set up forms (Tr. 35–36). Plaintiff testified that he had been unable to work since June 1981 due to an inability to withstand the physical exertional requirements of his work (Tr. 36).

The ALJ found that Plaintiff met the Act's disability insured status requirements and has not been engaged in substantial gainful activity since June 1981 (Tr. 15). In addition, the ALJ found that Plaintiff suffers from a severe impairment due to chest pains, hypertension, restrictive lung disease, and back pain (Tr. 15). Although the impairment, or combination of impairments, was not in itself severe enough to mandate a finding of disability, the ALJ found that Plaintiff was unable to perform past relevant work (Tr. 15). *See* 20 C.F.R. pt. 404, Subpt. P, app. 1. Thus, Plaintiff established a *prima facie* case. *Allen v. Califano, supra.*

The burden then shifted to the Secretary to demonstrate that Plaintiff could perform other substantial gainful activity which exists in the national economy. *Allen v. Califano, supra.* The Secretary relied in part on the testimony of a vocational expert. He testified that Plaintiff's most recent work experience, as a working foreman with infrequent operation of a hi-low truck,[6] would be classified as semi-skilled

---

**5.** The Secretary's regulations contain a Listing of Impairments which are considered severe enough to preclude an individual from engaging in any substantial gainful activity. *See* 20 C.F.R. 404.1525 pt. 404, subpt. P, app. 1. If the claimant establishes an impairment which is listed, or is medically equivalent to one of the listed impairments, the claimant is found dis-

abled based on the medical evidence alone. *Id.* § 404.1520(e).

**6.** In response to inquiries by the ALJ, Plaintiff testified that he drove the hi-low truck approximately one or two times a month for five years (Tr. 49, 51). Plaintiff also testified that he was not trained as a hi-lo driver but that he used the

and medium exertional level (Tr. 48–49, 51). He further testified that Plaintiff's previous work experience as a stone cutter and truck driver would be classified in the same category (Tr. 49). The vocational expert then opined that Plaintiff had acquired the following vocationally transferrable skills: following oral and written instructions, perceiving distances, observing safety regulations, directing work of others, including leadership skills, staying within prescribed standards and guidelines; and some clerical skills by virtue of having prepared employee time cards (Tr. 52–53). According to the vocational expert, these skills would be transferrable to approximately 8,000 to 9,000 sedentary jobs in the Detroit metropolitan area, such as bench assembly work, bench inspection work, and bench processing work (Tr. 53). The vocational expert also opined that these jobs would require Plaintiff to make some adjustments in terms of work setting and tools and that the adjustment period would be approximately one month (Tr. 53–54).

Because the ALJ concluded that Plaintiff did not suffer from any non-exertional impairments, he relied on the grids to determine whether Plaintiff was disabled within the meaning of the Act (Tr. 15). *See* 20 C.F.R. § 404.1569. Accordingly, the ALJ made findings regarding each of the four component factors necessary to the application of the grids. First, the ALJ found that Plaintiff, age 54 at the time of the hearing, was "closely approaching advanced age." (Tr. 15). *See* 20 C.F.R. § 404.1563(c). Second, the ALJ found that Plaintiff, having completed the eighth grade, had a "limited education" (Tr. 15). *See id.* § 404.1564(b)(3). Third, the ALJ found that Plaintiff's past relevant work was "semi-skilled" and that Plaintiff had acquired skills which were transferrable to other semi-skilled jobs available in the national economy (Tr. 15). *See id.* §§ 404.-1568(b), (d). Specifically, the ALJ found that Plaintiff had acquired transferrable skills "such as truck driving, processing time cards, supervising others, and observ-

ing safety regulations" all of which were transferrable to other semi-skilled work activities such as "bench assembly, inspection, and processing." (Tr. 15). Finally, the ALJ found that Plaintiff had a residual functional capacity for performing a full range of sedentary work (Tr. 15). *See id.* § 404.1567(a). Applying the grids, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. 16). *See id.* pt. 404, subpt. P, app. 2, table 1, rule 201.11. The magistrate would affirm each of these findings as being supported by substantial evidence.

Plaintiff's objections focus on the ALJ's finding that he has acquired transferrable work skills. Essentially, Plaintiff argues that the finding is not supported by substantial evidence. Specifically, Plaintiff contends that some of the identified "skills" are in fact "aptitudes" and that there is no evidence to support a finding that Plaintiff has acquired any skills by virtue of having prepared employee time cards. Therefore, Plaintiff argues that the ALJ should have applied Rule 201.10 to find that Plaintiff was disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table 1, Rule 201.10.

In 20 C.F.R. § 404.1568, the Secretary has established some guidelines for evaluating the transferability of work skills. Section 404.1568 provides, in pertinent part:

In order to evaluate your skills and to help determine the existence in the national economy of work you are able to do, occupations are classified as unskilled, semi-skilled, and skilled. In classifying these occupations, we use materials published by the Department of Labor. When we make disability determinations under this subpart, we use the following definitions:

. . . .

(d) Skills that can be used in other work (transferability). (1) What we mean by transferable skills. We consider you to have skills that can be used in

truck to move materials when the regular driver was unavailable (Tr. 50). On the basis of this

testimony, the vocational expert concluded that Plaintiff was a qualified hi-low driver (Tr. 51).

other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

(2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which—

(i) The same or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes, or services are involved.

(3) Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

Obviously, these provisions are applicable only if the claimant has acquired work related *skills* by virtue of his previous employment.

In *Weaver v. Secretary of Health and Human Services*, 722 F.2d 310 (6th Cir. 1983), the Sixth Circuit set forth standards for differentiating between "skills" and "aptitudes:"

[T]here is an inherent difference between "aptitudes" and "skills." An "aptitude" is an "inclination, a natural ability, talent, or capacity for learning." A "skill" is a "learned power for doing something

competently." Webster's Ninth New Collegiate Dictionary. In short, an aptitude is an innate ability while a skill is a learned ability. Compare 20 C.F.R. 404.-1521(b) with 20 C.F.R. 404.1565 and 404.-1568. While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job.

*Id.* at 311.[7] *See Blake v. Secretary of Health and Human Services*, 528 F.Supp. 881 (E.D.Mich.1981). More recently, the Sixth Circuit stated that "transferrable skills for purposes of the grid are made equivalent to education. Such skills refer to learned abilities which combine knowledge with coordinated physical movements, such as operating a typewriter or a learned mental discipline, or an area of expertise." *Ellington v. Secretary of Health and Human Services*, 738 F.2d 159, 161 (6th Cir. 1984).[8]

*Weaver* and *Ellington* make clear that the Secretary has the burden of proffering substantial and specific evidence to support a finding that the claimant has vocationally transferrable skills. The Sixth Circuit recently described the Secretary's burden in this regard:

While a vocational expert is not required, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Secretary*, 587 F.2d 321 (6th Cir.1978). (emphasis added). Where applicable, however, the Secretary may rely on the medical-vocational guidelines found at 20 C.F.R. Subpart P, Appendix II, to satisfy its burden of proving that the claimant can perform specific jobs in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Kirk v. Secretary*, 667 F.2d 524 (6th Cir.

---

7. In *Weaver*, the court held that "average intelligence, high average space relations, average form relations, above average finger dexterity, and manual dexterity in terms of tools" were not transferrable *skills*. 722 F.2d at 311.

8. In *Ellington*, the court held that " '[I]ndependence of judgment' and 'responsibility for a work product' are too vague to constitute particular skills which are transferrable." 738 F.2d at 161.

1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The scope of our review on this issue requires that there be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Id.* at 323.

*Richardson v. Secretary of Health and Human Services,* 735 F.2d 962, 964 (6th Cir.1984); *accord Stamper v. Harris,* 650 F.2d 108 (6th Cir.1981).

Additionally, the Court is persuaded that under *Weaver* the Secretary had the burden of proving that Plaintiff has *particularly* transferrable skills. In *Weaver,* the Sixth Circuit held that when a claimant is of advanced age, with a limited education and a physical capacity for only sedentary work, a presumption of disability arises and the Secretary must establish that the claimant has a *particularly* transferrable skill in order to rebut this presumption. 722 F.2d at 312. *Weaver* would establish a presumption of disability in the instant case but for the fact that Plaintiff had not attained age 55 at the time of the administrative hearing. As already stated, Plaintiff has a limited education and residual functional capacity for sedentary work.

The Court notes that Plaintiff was born on April 29, 1929. At the time of the administrative hearing, therefore, Plaintiff was 54 years old, which is classified as "closely approaching advanced age." *See* 20 C.F.R. § 404.1563(c). Plaintiff had not reached his 55th birthday when the ALJ's decision was issued on March 22, 1984. The ALJ's decision, however, did not become the final decision of the Secretary until May 21, 1984 when the Appeals Council denied Plaintiff's request for review. Plaintiff was 55 years old at that time, which would be classified as "advanced age" under the regulations. *See id.* § 404.- 1563(d).

Although not cited by Plaintiff, the Court finds the Fourth Circuit's decision in *Gory v. Schweiker,* 712 F.2d 929 (4th Cir.1983), instructive. In *Gory,* the court held that an ALJ must not "apply the age categories mechanically in a borderline situation." *Id.*

at 930–31. (citing 20 C.F.R. § 404.1563(a)). In *Ford v. Heckler,* 572 F.Supp. 992 (E.D. N.C.1983), a district court relied on *Gory* in evaluating a case strikingly similar to the case before this Court:

Under Rule 201.17, Table 1, Appendix 2, a younger individual between ages 45 and 49 who is illiterate and unskilled is disabled. At the time the ALJ issued his ruling, plaintiff was forty-four years, ten months old, and at the time the Appeals Court rejected plaintiff's claim, he was fifteen days shy of forty-five. Rather than "make an individual assessment of each claimant's abilities and limitations," as required by the regulations, *Heckler v. Campbell,* 461 U.S. 458, 460 n. 1, 103 S.Ct. 1952, 1954 n. 1, 76 L.Ed.2d 66 (1983), the Secretary mechanically applied the wrong rule to a situation requiring more attention than it was given.

*Id.* at 994 (footnote omitted).

■ *Gory* and *Ford* lead this Court to conclude that Plaintiff in this case should have been afforded the *Weaver* presumption of disability. Plaintiff was four months short of age 55 (advanced age) at the time of the hearing and only one month short of age 55 at the time the ALJ issued his decision. Moreover, Plaintiff was 55 years old when the Secretary's decision became final. The rationale for requiring the Secretary to prove that a claimant has *particularly* transferrable skills in a *Weaver* case is that a person of advanced age is generally unable to readily acquire new skills. *See generally* 20 C.F.R. pt. 404, Subpt. P, App. 2, § 201.00(b)-(g). That rationale is equally applicable in a case such as this where the claimant is closely approaching age 55 at the time of the administrative hearing and had reached age 55 before the disability determination became final. In evaluating the evidence, therefore, the Court will also determine whether the Secretary has demonstrated that Plaintiff has particularly transferrable skills.

■ In the instant case, the Court concludes that the Secretary did not sustain his burden of proving, by substantial and specific evidence, that Plaintiff has ac-

quired vocational skills which are particularly transferrable. Initially, the Court notes that in his objections, Plaintiff refers only to the testimony of the vocational expert and does not address the ALJ's actual findings regarding Plaintiff's transferrable skills. The Court, however, has reviewed the record to determine whether substantial evidence supports the *ALJ's findings* on this issue.

The ALJ's finding that Plaintiff has acquired a transferrable *skill* of "observing safety regulations" is clearly erroneous. The ability to observe safety regulations is not a "learned abilit[y] which combine[s] knowledge with coordinated physical movements" nor is it a "learned mental discipline, or an area of expertise." *Ellington*, 738 F.2d at 161.1 At best, the ability to observe safety regulations is an ability to follow prescribed guidelines and is common to virtually every individual employed in the national work force. If this ability were considered to be a skill, there would be "no basis for distinguishing claimant's skills from those" of any other occupation. *Id.* Therefore, the ALJ could not properly consider Plaintiff's ability to observe safety regulations in deciding whether Plaintiff can perform other work in the national economy.

With respect to Plaintiff's ability to process time cards, the ALJ's finding that Plaintiff has acquired a transferrable skill is erroneous in two respects. First, the Court concludes that the evidence of record does not support a finding that Plaintiff has acquired a "particular learned ability" to perform this task. Instead, Plaintiff's testimony indicates that his function was essentially mechanical. That is, Plaintiff merely filled in the appropriate number of hours on each employee time card (Tr. 34). He was not required to prepare any other reports (Tr. 34). Although the vocational expert opined that this task imparted clerical skills, the ALJ found that Plaintiff's *skill* was limited to "processing time cards." This Court, however, concludes that the ALJ went too far in finding that

this ability constitutes a *skill*. The ability to fill in blanks on a prepared form is a talent possessed by most adults and scarcely constitutes "a particular learned ability to do a specific job." *Weaver*, 722 F.2d at 311. Therefore, the Court concludes that the ALJ erred in finding that Plaintiff has acquired the skill of "processing time cards."

In addition, assuming that Plaintiff had in fact acquired such a skill, this Court concludes that the Secretary has failed to demonstrate that this "skill" is particularly transferrable to sedentary jobs in the national economy. Weaver, 722 F.2d at 312. The vocational expert did not indicate in what respect an ability to process time cards would be directly transferrable to "bench assembly, processing, and inspecting work. The Court can perceive no logical connection between filling in blanks on a prepared form and assembling or inspecting machinery and similar equipment. Additionally, while these tasks would require an ability to use tools and/or operate machinery,[9] Plaintiff specifically testified that his past relevant work did not require him to use tools or operate any machinery other than occasional truck driving (Tr. 34–35). *See* 20 C.F.R. § 404.1568(d). Accordingly, the Court concludes that the Secretary did not sustain his burden of proof on this issue and the ALJ therefore erred in finding that Plaintiff had acquired a transferrable skill of processing time cards.

The ALJ's finding regarding Plaintiff's acquired skills for supervising others is similarly erroneous. Although the Court recognizes that leadership abilities may constitute a skill, the record in this case does not support a finding that Plaintiff in fact had acquired such *skills*. Plaintiff testified that he was a working foreman and directed up to 5 other employees in unloading drums from a delivery truck (Tr. 33–34). There is no evidence that Plaintiff had any input in determining what tasks would be accomplished or otherwise coordinated day-to-day operations. Nor is there evidence that Plaintiff was responsible for

**9.** The vocational expert testified to this fact. *See* Tr. 53–54.

making any personnel decisions or even counselling other employees. These are the types of tasks normally associated with supervisory *skills*. Merely directing others to unload a particular truck at a particular time falls far short of establishing a "learned mental discipline, or an area of expertise." *Ellington*, 738 F.2d at 161. Therefore, the ALJ erred in finding that Plaintiff has acquired skills for supervising others and could not properly consider this skill in determining whether Plaintiff can perform other jobs in the national economy.

Finally, the ALJ found that Plaintiff has acquired truck driving skills. The Court notes that the ability to drive a truck is a "particularly learned" skill. Moreover, substantial evidence supports the ALJ's finding that Plaintiff's past work experience, driving delivery trucks and infrequent operation of a hi-low truck, imparted this skill. The Court, however, rejects the ALJ's conclusion that Plaintiff's truck driving skills are transferrable to bench assembly or processing work. There is no evidence that these two tasks require similar skills nor that similar tools and machines are used in performing the tasks. *See* 20 C.F.R. § 404.1568(d)(2). Instead, the record indicates that Plaintiff would have to learn tool and machine operation skills in order to perform the jobs identified by the vocational expert (Tr. 53–54). Accordingly, the Court concludes that the Secretary has failed to demonstrate by substantial evidence that Plaintiff's truck driving skills were particularly transferrable to bench assembly or processing work. *Weaver*, 722 F.2d at 312.

Inasmuch as the Court determines that Plaintiff has acquired no transferrable skills, Rule 201.02 directs a finding of "disabled" in the instant case. 20 C.F.R. pt. 404, Subpt. P., App. 2, Table 1, Rule 201.02. Accordingly, Plaintiff's motion for summary judgment is GRANTED; the Secretary's decision is VACATED and the matter is REMANDED for an award of benefits. An appropriate order shall enter.