**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CURTIS C. CLINE,
Plaintiff-Appellant,

v.

No. 95-2076

SHIRLEY S. CHATER,
COMMISSIONER OF SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert J. Staker, District Judge.
(CA-93-1093)

Argued: March 7, 1996

Decided: April 19, 1996

Before NIEMEYER and MOTZ, Circuit Judges, and YOUNG,
Senior United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Benita Yolan Whitman, BENITA WHITMAN ATTOR-
NEY AT LAW, Elkview, West Virginia, for Appellant. Lori Riye
Karimoto, Office of the General Counsel, DEPARTMENT OF
HEALTH & HUMAN SERVICES, Philadelphia, Pennsylvania, for
Appellee. **ON BRIEF:** Juliet W. Rundle, JULIET W. RUNDLE

ATTORNEY AT LAW, Pineville, West Virginia, for Appellant. Charlotte Hardnett, Chief Counsel, Region III, William R. Reeser, Assistant Regional Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, Pennsylvania; Rebecca Betts, United States Attorney, Stephen M. Horn, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Curtis C. Cline, appeals the district court order affirming the decision of the Commissioner denying his application for Social Security Disability benefits. Cline contends that the Commissioner's decision is not supported by substantial evidence because the Administrative Law Judge ("ALJ") posed an inaccurate hypothetical question to the vocational expert who testified, and the vocational expert's testimony was not supported by the evidence and was unreliable. Finding no reversible error, we affirm.

Cline applied for Social Security Disability benefits on December 26, 1991, alleging disability commencing December 31, 1979. His insured status for purposes of entitlement to Social Security disability insurance benefits expired on December 31, 1984. Thus, he had to establish that he was disabled before January 1, 1985 in order to be entitled to disability benefits. 42 U.S.C. § 423(a)(1)(A)(1994); 20 C.F.R. § 404.131(a) (1995). After his application was denied initially and upon reconsideration, he appealed to an Administrative Law Judge, who found that he was not disabled within the meaning of the Social Security Act, and denied his claim. The Appeals Council denied Cline's request for discretionary review of the ALJ's decision. The ALJ's decision is, therefore, the final decision of the Commissioner. 20 C.F.R. § 404.981 (1995).

2

Cline filed a complaint in the district court challenging the Commissioner's final decision. The district court adopted the report and recommendation of the magistrate judge, affirmed the Commissioner's decision to deny Cline's claim and denied Cline's motion for summary judgment. This appeal followed.

Our review in this case is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g) (1994). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales , 402 U.S. 389, 401 (1971) (citing Consolidated Edison Co. v. NLRB , 305 U.S. 197, 229 (1938)). In making this determination, we are mindful of the fact that "[u]ltimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

The Commissioner's regulations lay out a five step sequential evaluation process for making disability determinations under the Act. 20 C.F.R. § 404.1520 (1995); Hunter v. Sullivan, 993 F.2d 31, 34-35 (4th Cir. 1992). The claimant bears the burden of satisfying the first four steps; if the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in significant numbers in the economy that the claimant can perform considering his age, education, work experience, and remaining physical and mental capabilities. See, e.g., Hunter, 993 F.2d at 35; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The parties agree, and the ALJ found, that Cline met his burden under the first four steps of the analysis. Cline argues, however, that the Commissioner failed to meet her burden of producing evidence that jobs that Cline was capable of performing existed in significant numbers in the economy.

In order to meet this burden, the Commissioner introduced the testimony of a vocational expert. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The vocational expert's testimony must be based upon consideration of

3

the other evidence in the record (in this case, Cline's testimony, the affidavits submitted by his friends and relatives, the testimony of a medical expert, Dr. Chillag, and various medical records). See id. Additionally, the vocational expert's testimony "must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." Id. Cline contends that the ALJ posed an inappropriate hypothetical question to the vocational expert in this case, and argues that the "flaws" in the hypothetical rendered the vocational expert's evaluation of the availability of jobs for someone of Cline's ability inaccurate.

During the testimony of the vocational expert, the ALJ posed the following hypothetical question:

> Let's assume that we have a claimant who is approximately 44 years old. He has a third grade education with a limited ability to, to read and write. That he is able to count money and make change. Assume further that I find in general that he has a physical capacity to perform light work. That he would be able to occasionally climb, balance, stoop, crouch, kneel and crawl. He would have some difficulty with reaching with the left arm. But I note that he is right-handed. He would also have non exertional limitations in that he would be precluded from working around fumes, smoky or dusty environments. Given these limitations, can you identify any occupations that existed in the economy back in the years mentioned earlier [prior to January 1, 1985]?

The vocational expert responded in the affirmative, and went on to list several examples and give estimates of the numbers of such jobs that existed during the relevant time period.

Cline claims there is no support in the record for a finding that he had a third grade education with a limited ability to read and write, as the ALJ described in the hypothetical. In fact, Cline himself testified that although he "just barely got through the third [grade]" and he "didn't really go" that year, he knew the alphabet, was able to write a few small words, had learned to read "a little bit," and was able to understand "a little bit" of the letters and forms he received in the mail. In describing the types of jobs Cline could do, the vocational

4

expert indicated that they were "unskilled entry level jobs," that "require very little in the way of academic knowledge." Moreover, in estimating the number of existing jobs for which Cline would have been qualified, the vocational expert reduced her estimate to exclude those jobs that "require reading things." Thus, the inclusion in the hypothetical question of the "third grade education" and "limited ability to read and write" did not render the vocational expert's evaluation inaccurate.

Nor is Cline's argument that he is "functionally illiterate" helpful to him. "Functional illiteracy" would result in an automatic classification as disabled if a claimant was limited to only sedentary work. Because the ALJ found him capable of both light and sedentary work, however, a finding of functional illiteracy would not make Cline disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.16 (1995).

Cline's next argument with regard to the hypothetical is that the ALJ "inexplicably did not include Mr. Cline's inability to grip with his left hand." As to both Cline's inability to grip with his left hand and his difficulty in raising his left arm, the only evidence before the ALJ was Cline's own testimony. None of the medical evidence in the record refers to either of these physical problems. Dr. Chillag, the medical expert who testified before the ALJ, stated that Cline's medical records contain "no mention of the injury to . . . his arm prior to '91." After reviewing Cline's medical records and hearing Cline's testimony, Dr. Chillag concluded that the only impairment Cline had prior to 1985 was pneumoconiosis, but despite this condition, Cline would have been able to perform medium to heavy work, "from a pulmonary standpoint." Nonetheless, the ALJ gave Cline the "benefit of the doubt" and included Cline's difficulty raising his arm in the hypothetical. The ALJ also limited Cline's physical capacity to light work, rather than medium to heavy as suggested by Dr. Chillag. In light of Dr. Chillag's testimony and Cline's medical records, the ALJ would have been justified in excluding all of Cline's physical impairments except for pneumoconiosis from the hypothetical. The ALJ's more "generous" hypothetical, then, is certainly supported by substantial evidence, and the omission of the alleged grip impairment did not render the vocational expert's testimony inaccurate.

Cline also complains that the fact that he "could only work four days a week" was not considered in the ALJ's hypothetical. He testi-

5

fied that during his last year of work, he missed approximately one day of work each week because he "[j]ust didn't feel like going out." Later in his testimony, he explained that he stayed home those days because he felt "weak," and because of problems with his neck and legs. Even after he stopped working, he testified, about once each week he spent the whole day in bed. There was no medical evidence in the record to indicate a medical condition that would have forced Cline to stay at home in bed one day each week. Moreover, the vocational expert testified that a person with such limitations would still be able to work a part-time job. Part-time work may constitute substantial gainful activity under the Social Security Act. See Garnett v. Sullivan, 905 F.2d 778, 780-81 (4th Cir. 1990) (Claimant's one hour per day job as a school bus driver found to be substantial gainful activity); Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) ("work may be substantial even if done on a part-time basis") (quoting 20 C.F.R. 404.1572(a) (1989)).

Cline's remaining argument is that the vocational expert's testimony was unreliable because the jobs suggested by the vocational expert are not jobs that the Dictionary of Occupational Titles (DOT) lists as appropriate under the ALJ's hypothetical. Cline did not raise this issue at the administrative level or in the district court, and thus we need not consider this argument. See Pleasant Valley Hospital, Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994) ("As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved.") As we noted in Pleasant Valley , this rule "is not a strict jurisdictional bar, it is a prudential one." Id.

Even if we were to reach the issue, however, Cline's argument is meritless. The Social Security regulations themselves provide that the DOT is not the sole source of admissible information concerning the availability of appropriate jobs. For example, 20 C.F.R. § 404.1566(d) (1995) provides that the Commissioner may take administrative notice of various publications issued by the Bureau of the Census, the Social Security Administration, and state employment agencies, as well as the DOT. See also, Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994). More importantly to the case at bar, 20 C.F.R. § 404.1566(e) specifically contemplates the use of vocational experts in determining complex issues such as the matching of a claimant's

6

work skills with available occupations. The regulations do not require the Commissioner or the vocational expert to rely on classifications in the <u>DOT</u> at all. <u>See</u> 20 C.F.R.§ 404.1566(d). Furthermore, "Social Security Ruling 82-41, Part 2(c) states that the[<u>DOT</u>] can provide guidance only as to a `majority' of jobs in the national economy, and that a vocational expert should be consulted in cases where the characteristics of a job are not `obvious.'" <u>Barker</u>, 40 F.3d at 795.

Lastly, the <u>DOT</u> itself contains a disclaimer"noting that it provides only `composite descriptions of jobs as they may typically occur.' [Thus, t]he descriptions listed in the dictionary `may not coincide with a specific job as actually performed in a particular establishment or any given industry.'" <u>Barker</u>, 40 F.3d at 795 (quoting the <u>DOT</u>.) As the Sixth Circuit noted in <u>Barker</u>, the <u>DOT</u> is based on a selective sampling of only 75,000 job sites out of the millions of workplaces nationwide. Given its limitations, "[i]t would be manifestly inappropriate to make the [<u>DOT</u>] the sole source of evidence concerning gainful employment." Therefore, the ALJ was certainly justified in relying on the evaluation of the vocational expert, even where that expert's testimony may have differed from the job descriptions or classifications in the <u>DOT</u>.

Viewing the record as a whole, we hold that the Commissioner's finding that Cline had the residual functional capacity to perform a significant number of jobs that existed in the national economy during the time at issue is supported by substantial evidence. The district court's order affirming the Commissioner's denial of Cline's claim for benefits is therefore

<u>AFFIRMED</u>.

7