Carolyn FRANCE

v.

Kenneth S. APFEL, Commissioner
of Social Security

No. CIV. A. MJG–99–1907.

United States District Court,
D. Maryland.

March 13, 2000.

Frederick Raab, Mignini, Raab & Lidinsky, Baltimore, MD, for Plaintiff.

Allen Loucks, Office of United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

Carolyn France ("Claimant") has filed this appeal from the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income benefits ("SSI"). She has exhausted her administrative remedies, and review by this Court is appropriate. The parties have consented to proceed before a magistrate judge, pursuant to 28 U.S.C. § 636(c), Local Rule 301.4. Pending are the cross-motions for summary judgment the parties have filed. (Paper Nos. 10, 11 and 12.) No hearing is necessary, Local Rule 105.6.

For the reasons stated below, the claimant's motion will be granted and the case remanded to the Commissioner for further proceedings consistent with this Memorandum and Order. The claimant asserts that the Commissioner's final decision should be reversed because: (1) there was not substantial evidence to support the ALJ's conclusion that the claimant did not meet listing 14.08 on the Listing of Impairments ("LOI"), Appendix 1, subpart P, regulations No. 4; (2) the ALJ did not correctly address the claimant's complaints of pain; (3) the ALJ failed to obtain a consultative psychological examination for the claimant; (4) the hypothetical questions the ALJ posed to the vocational expert who testified at the hearing did not accurately address the claimant's physical and mental limitations; and finally, (5) the ALJ failed to take into account the claimant's "borderline" age of almost 55, when applying the Grid Rules to determining the claimant's residual functional capacity for work.

The claimant failed to raise all five of these objections in her request for review presented to the Appeals Council. The

Commissioner asserts that the claimant only raised the first of her objections, regarding substantial evidence and the list of impairments, before the Appeals Council. The Commissioner asserts that she waived the latter issues by failing to raise them at the administrative level. It appears that the law regarding the obligation of a claimant seeking social security benefits to raise all issues during the administrative review process[1] is unsettled. The Supreme Court granted certiorari on November 29, 1999, in a case from the 5th Circuit addressing the authority of an appeals court to hear arguments that a social security claimant failed to raise before the Appeals Council during her administrative appeal.[2] *See Sims v. Apfel,* 162 F.3d 1160 (5th Cir.1998), *cert. granted* — U.S. —, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999). That case is pending, and so the high court has not yet spoken on this issue. This court has issued opinions with conflicting results on the question. *See Dorsey v. Apfel,* Civ. No. PJM–98–4068, at 10 n.7 (D.Md. Oct. 18, 1999) (Pl. Reply, Ex. 1, Paper No. 12)(addressing all claims raised before the court because "there is no precedent at this time requiring a claimant to articulate

the errors raised before the Appeals Council with precision"); *but see Cook v. Chater,* 901 F.Supp. 971, 978 (D.Md.1995)(holding that issues not raised at the agency level cannot be considered by the court). In addressing this issue, albeit in the context of a different administrative agency, the Fourth Circuit noted that "[a]s a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved." *See Pleasant Valley Hosp., Inc. v. Shalala,* 32 F.3d 67, 70 (4th Cir.1994). However, that case did not deal with a social security claim, and so it is not directly dispositive.[3] Additionally, the court noted that the claimant's failure to raise an issue at the administrative level is not a strict jurisdiction bar. *See id.* While I acknowledge the analysis underlying the decisions to the contrary, and I appreciate the principles of limited judicial review of actions of administrative agencies which underlie them, I will, in this case, consider all of the objections raised before this Court by the claimant because it would be unfair to bar components of her claim solely on the ba-

---

**1.** This obligation is known as the Issue Exhaustion Doctrine. *See Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir.1999) (citing *McCarthy v. Madigan,* 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992))(noting that "a party seeking judicial review of an agency action must generally exhaust available agency remedies and may not generally proceed upon an argument not made to the agency").

**2.** There is a split among the circuits regarding the application of the issue exhaustion doctrine to social security cases. *See Johnson v. Apfel,* 189 F.3d 561, 563 (7th Cir.1999) (concluding that a claimant did not waive his right to make a certain argument by failing to raise it before the Appeals Council); *Harwood v. Apfel,* 186 F.3d 1039, 1042 (8th Cir.1999) (holding that claimants do not waive their rights to raise issues by failing to raise them before the Appeals Council). *But see James v. Chater,* 96 F.3d 1341, 1344 (10th Cir.1996) (holding that "issues not brought to the attention of the Appeals Council on administrative review may, given sufficient notice to the claimant, be deemed waived on subsequent

judicial review"); *Harper v. Secretary of HHS,* 978 F.2d 260, 264 (6th Cir.1992) (refusing to consider an argument that was not raised at the administrative level).

**3.** Although there are numerous unpublished Fourth Circuit opinions that apply the principles addressed in *Pleasant Valley Hosp., Inc., v. Shalala,* 32 F.3d 67, 70 (4th Cir.1994), to social security cases, *see, e.g., Hickman v. Chater,* No. 96–1953, 1997 WL 570874 (4th Cir. Sept.16, 1997); *Cline v. Chater,* No. 95–2076, 1996 WL 189021 (4th Cir. April 19, 1996); *Brim v. Chater,* No. 95–2178, 1996 WL 10288 (4th Cir. Jan.9, 1996), these cases are not binding precedent. *See* Fed. R.App. Proc. Local Rule 36(c) (noting that the citation of unpublished dispositions is "disfavored"). Additionally, in almost all of the cases in which the Fourth Circuit determined that a claimant in a social security case had waived an issue, the claimant also failed to raise the issue before the district court. *See, e.g., Hickman,* 1997 WL 570874, at *1 n. *; *Cline,* 1996 WL 189021, at * 4; *Clagg,* 1995 WL 679841, at * 1; *Fagg v. Chater,* No. 95–2097, 1997 WL 39146, at * 2 (4th Cir. Feb.3, 1997).

sis of an issue that has not clearly been established by the courts.[4]

The Commissioner's decision must be upheld if supported by substantial evidence which is more than a scintilla, but less than a preponderance, and sufficient to support a conclusion in a reasonable mind. *See* 42 U.S.C. § 405(g) (1988); *King v. Califano,* 599 F.2d 597 (4th Cir. 1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir.1977); *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966). The court may not weigh conflicting evidence, determine credibility, or substitute its judgment for the Commissioner's. *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Although deferential, this standard of review does not command acceptance of a determination by the Commissioner which applies an improper standard, or misapplies the law. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). Following its review, the court may affirm, modify or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

■ The claimant argues that there is not substantial evidence to support the ALJ's finding that her condition as a result of having HIV does not meet the standards set forth in Listing 14.08N of the LOI, 20 C.F.R. Part 404, Subpart P, app. 1, § 14.08N. If a claimant's disability

---

**4.** This is not to say that there won't be circumstances where the district court should decline to decide issues not clearly raised before the administrative agency or that the arguments in favor of a *per se* rule against considering such issues do not rest on undeniably important prudential principles regarding the limited role District Courts are empowered to play in reviewing final decisions of administrative agencies. *See Pleasant Valley Hosp., Inc. v. Shalala,* 32 F.3d 67, 70 (4th Cir.1994). It is just that until the Supreme Court resolves this question as it specifically applies to actions by the Social Security Administration, it would be unfair to adopt an inflexible rule which forecloses review by this court. In the present case, all the facts needed to address the claimant's appeal are present in the record, and as discussed more fully infra, the ALJ fully considered those facts and explained his ruling after having taken them into consideration. Therefore, this case does not present the situation where the court is considering an issue without any indication from the administrative agency as to how it would resolve the issue if given the opportunity. Additionally, proceedings before the Social Security Administration, such as the hearing before the ALJ and the review by the Appeals Council in this case, are not intended to be adversarial. *See Cook v. Heckler,* 783 F.2d 1168, 1173, (4th Cir.1986) (citing *Walker v. Harris,* 642 F.2d 712, 714 (4th Cir.1981)) (holding that ALJ has an independent duty to develop the record); *see also* Jon Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings,* 97 Colum. L. Rev. 1289, 1300 (1997)(addressing the results of the Social Security Administration's use of an inquisitorial system for its proceedings as opposed to the more traditional adversarial system). As noted in the Dubin article, the use of an inquisitorial system requires that the Administration not only decide cases but gives the Administration the authority and the *responsibility* to investigate the facts and develop the record. *Id.* Under such a system, absent clear notice to the claimant of the need to raise all issues at the successive levels of the administrative process, and the adverse consequences of failing to do so, there is a risk that the claimant will be misled by the non-adversarial nature of the proceeding. As noted in *Dorsey v. Apfel,* Civ. No. PJM–98–4068, at 10 n. 7 (D.Md. Oct. 18, 1999) (Pl. Reply, Ex. 1, Paper No. 12), claimants are not clearly warned in connection with the filing of a request for review by the Appeals Council, itself a non-adversarial proceeding, *see* 20 C.F.R. § 404.900(b), of the adverse consequences of not raising all potential grounds before that body. While the regulations allow a party to file a brief with the Appeals Council, *see* 20 C.F.R. § 404.975, they give no notice that issues not specifically raised before the Appeals Council are waived. The regulations only state that a request for review by the Appeals Council may be made through Form HA–520, "Request for Review of Hearing Decision/Order," or through any other writing which specifically requests review. *See* 20 C.F.R. § 422.205(a). The transcript in the present case shows the limited nature of this form. (Tr. at 7.) In concluding not to apply the issue exhaustion doctrine to social security cases, the Eighth Circuit specifically noted that "the Appeals Council's non-adversarial proceedings give claimants ... no advance notice that issues not specifically raised will be forfeited." *Harwood v. Apfel,* 186 F.3d 1039, 1043 (8th Cir.1999).

meets or equals an impairment found on the listing, the claimant is presumed disabled. Listing 14.08N requires that a claimant establish that he or she has HIV, and that the HIV has repeatedly manifested, resulting in significant symptoms having a marked affect on at least one area of the claimant's social functioning (i.e., restrictions in activities of daily living). In the present case, the ALJ concluded, upon reviewing the records of the claimant's treating physician, Dr. Fingerhood, that the claimant had not presented sufficient evidence of repeated manifestations of HIV infections. (Tr. at 15–16.) The ALJ noted that Dr. Fingerhood reported over a several year period that the claimant had no opportunistic infections and no HIV-related illnesses. (Tr. at 15–16, 166, 219.) On January 3, 1996, Dr. Fingerhood documented that the claimant had a 14% weight loss in a seven month period. (Tr. at 217.) Under Listing 14.08I, an involuntary weight loss of 10% is a manifestation of HIV. However, the ALJ noted that Dr. Fingerhood viewed this weight loss as a byproduct of the claimant's use of cocaine and not as a manifestation of her HIV. (Tr. at 15–16, 202.) The ALJ, therefore, concluded that this was not a manifestation of the claimant's HIV. (Tr. at 15–16.) While the record contains evidence that the claimant suffered from fatigue, malaise and depression, (Tr. at 157, 161, 203 and 211), the claimant failed to establish that these symptoms were HIV-related. The

claimant presented no other medical evidence of HIV-related illness, nor does the record contain any evidence of claimant suffering from HIV-related illness. Accordingly, there was substantial evidence to support the conclusion of the ALJ that the claimant did not meet Listing 14.08N because she failed to establish the required repeated manifestations of HIV-related symptoms.[5] Additionally, there is also ample evidence in the record to show that the claimant's HIV does not have the required marked affect on her social functioning. Dr. Fingerhood described the claimant as feeling "ok" and "energetic." (Tr. at 151, 159, 162, 203, 208). During the hearing, claimant stated that she had positive relationships with family and friends, dined out, visited with relatives, babysat, did laundry, vacuumed, and cooked and prepared meals. (Tr. at 42–48, 54–55, 129–132.) Therefore, there is substantial evidence to support the ALJ's conclusion that the claimant's condition does not meet Listing 14.08N.

◼ The claimant next argues that the ALJ did not properly address her complaints of pain. The 4th Circuit has determined that for "pain to be found disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged." *See Craig v. Chater,* 76 F.3d 585, 592 (4th Cir.1996) (citing *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir.

---

**5.** Relying on *Cook v. Heckler,* 783 F.2d 1168 (4th Cir.1986),the claimant also argues that the ALJ failed adequately to articulate the bases for his conclusion that her impairments did not meet or equal requirements set forth in this Listing. As the Commissioner notes, (Paper No. 11 at 11–15), it is not clear whether the reasoning in *Cook* applies to applications for Social Security benefits, as it addressed an application for disabled widow's benefits, which is governed by a different, more stringent, disability standard. Nevertheless, while the ALJ's opinion was brief, I find that he did adequately address the bases for his conclusions. He referenced the relevant listing, he discussed the requirements of that listing and the medical evidence presented by the claimant's treating physician, Dr.

Fingerhood, in detail. As already discussed, the only evidence the claimant presented of an HIV-related symptom was her weight loss. The ALJ discussed this and provided an explanation why he concluded that this weight loss was not HIV-related. This was a brief, but sufficient, explanation of his conclusion, especially in light of the lack of evidence in the record to contradict his conclusion and the more fully developed articulation of his evaluation of the claimant's claims at step four and five of this process. *See e.g., Sullivan v. Zebley,* 493 U.S. 521, 534–35, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)(noting that deficiencies in the Listing analysis at step 3 could be remedied at the succeeding steps of the sequential analysis.)

1986)). The evaluation of complaints of pain requires a two-step-process. *See Craig*, 76 F.3d at 594. First, there must be objective evidence showing the existence of medical impairment(s) which could reasonably be expected to cause the pain the claimant allegedly suffers. *See id.* If the claimant meets this threshold burden, then the intensity and persistence of the claimant's alleged pain, as well as the extent to which it affects the claimant's ability to work, must be evaluated based upon all the evidence in the record. *See id.* at 591.

■ In the present case, the ALJ concluded that the claimant's allegations of pain and limitation were not consistent with the medical evidence or her description of her daily activities. (Tr. at 17.) As such, the ALJ concluded that the claimant failed to meet the threshold burden required under *Craig*. The ALJ specifically addressed the medical evidence submitted by the claimant and concluded that this evidence was not consistent with claims of totally disabling pain. (Tr. at 17.) The ALJ noted that Dr. Fingerhood concluded that she still had abduction of 120 degrees even though she has arthritis and a rotor cuff injury. (*Id.*) The ALJ also noted that Dr. Fingerhood's records did not indicate that the claimant complained of having sleep disturbance. (*Id.*) Additionally, the claimant was only receiving limited pain medication, and the ALJ concluded that this was not consistent with her allegations of pain. (*Id.*) Finally, the ALJ noted that the claimant's description of her daily activities included caring for her personal needs, preparing meals, reading magazines, grocery shopping, doing laundry, taking out the trash, and visiting her daughter and grandson. (Tr. at 16.) The ALJ concluded that these activities were not consistent with the claimant's complaints of pain. (Tr. at 17.)

It is only necessary for the ALJ's decision to be supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir.1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). Substantial evidence is "not a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), but rather is such evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The ALJ cited substantial evidence to support his conclusion that the claimant's allegations of pain were not consistent with the medical evidence or her description of her daily activities. (Tr. at 16–17.) Therefore, the ALJ properly addressed the claimant's allegations of pain.

■ The claimant next alleges that the ALJ did not sufficiently develop the record because he failed to obtain a consultative psychological examination.[6] While there is evidence in the record regarding the claimant's mental impairments, (Tr. at 122, 161, 209–11), there is no report from a psychologist or psychiatrist. In this Circuit, it is clear that the ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173, (4th Cir. 1986) (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir.1981)). While the ALJ is

---

**6.** The ALJ stated several times during the hearing that he would consider the claimant's request for a consultative psychological examination. (Tr. at 70–71, 75–76). Unfortunately, in his decision, the ALJ failed to specifically address why he choose not to order a consultative psychological examination. However, the ALJ did provide a detailed analysis of the claimant's mental disorders, preparing a Psychiatric Review Technique form. Thus, while further explanation by the ALJ of his reasons for not ordering the examination would have been helpful, there are enough facts in the record to enable me to assess whether the ALJ's decision regarding the claimant's assertions of mental impairments were supported by substantial evidence, and legally correct.

free to contact physicians, psychologists or other medical sources if the record is inadequate, *see* 20 C.F.R. § 404.1512(e), the ALJ does not otherwise have an obligation to obtain additional information if the record is adequate to make a determination regarding a disability claim. Additionally, the ALJ is permitted to complete the standard document outlining the evaluation of a claimant's mental impairment without the assistance of a medical advisor. *See* 20 C.F.R. § 404.1520a(d)(1)(I).

■ In the present case, there was evidence in the record before the ALJ regarding the claimant's mental disorders. Her treating physician, Dr. Fingerhood, noted that the claimant's depression was being treated through prescribed medications, (Tr. at 158), and characterized her as feeling upbeat and energetic. (Tr. at 151, 159, 162, 203.) While Dr. Fingerhood noted that the claimant has some difficulties in maintaining social functions as a result of her depression (Tr. at 155, 174), he also noted that she has no sleeping abnormalities or disturbances, no decreases in her energy, and no loss of cognitive abilities. (Tr. at 150–53.) Even though the ALJ did not order a consultative examination, he did prepare a Psychiatric Review Technique form (PRT) and attached it to his decision. (Tr. at 22–24.) Using this form, the ALJ evaluated the mental problems which the claimant's evidence established and the affect of these problems on the claimant's daily life. (*Id.*) The ALJ also evaluated the claimant's mental condition in light of Listing 12.04. *See* 20 C.F.R. Part 404, Subpart P, apps. 1, § 12.04. The ALJ concluded that the claimant had several affective disorders found under Listing 12.04. (Tr. at 22–23.) However, a claimant does not meet Listing 12.04 unless he or she also establishes that these affective disorders cause marked limitations of at least two of four possible areas of social functioning. In the present case, while the ALJ found that the claimant has some limited social functions due to her mental condition, after preparing the PRT, he concluded that these limitations were slight and therefore, did not

meet the requirements of Listing 12.04. (Tr. at 24.) Under these circumstances, the ALJ had no obligation to order a consultive examination because there was sufficient evidence in the record to make a fair assessment of the claimant's mental impairments.

■ The claimant next argues that the hypothetical questions the ALJ posed to the vocational expert who testified at the hearing did not accurately address the claimant's physical and mental limitations. Once it is established that a claimant cannot perform past relevant work, the burden shifts to the Social Security Administration to establish that a significant number of other jobs are available in the national economy which the claimant can perform. *See* 20 C.F.R. § 404.1520(f). "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen,* 889 F.2d 47, 50–51 (4th Cir.1989). Thus, in order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. *Id.* However, the ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999), and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations. *See Copeland v. Bowen,* 861 F.2d 536, 540–41 (9th Cir.1988). Therefore, based on his or her evaluation of the evidence, an ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ. *See Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir.1986). In the present case, the ALJ asked the vocational expert about possible positions for the claimant

based upon a finding that she could perform work at a light exertional level and that she could not reach above her shoulder level. (Tr. at 72.) The ALJ also asked the vocational expert to consider all the documentary evidence and testimony heard at the hearing. (*Id.*) Therefore, the questions the ALJ asked the vocational expert clearly were based on substantial evidence and accurately reflected the claimant's limitations.

■ Finally, claimant contends that the ALJ failed to take into account the claimant's "borderline" age of almost 55, when applying the Grid Rules to determining the claimant's residual functional capacity for work. Once it has been established that a claimant cannot perform his or her past work experience, the ALJ must determine what residual work ability the claimant has retained. To assist with this determination, the Secretary has promulgated medical-vocational guidelines, known, in part, as the "grids". *See* 20 C.F.R. Part 404, Subpart P, apps. 2. These grids take into account the claimant's physical abilities, age, education, and work experience, and direct a finding of disability or lack of disability depending on the combination of these factors.

When applying these grids to the claimant, the ALJ determined that she should be evaluated under Table No. 2, 20 C.F.R. Part 404, Subpart P, apps. 2, §§ 202.00–202.22, because her residual functional capacity only allows for a maximum sustained work capability of light work as a result of her severe medically determinable impairments. (Tr. at 18.) The claimant was 54 when she appeared before the ALJ. (Tr. at 18.) She has a limited eighth grade education, and is literate in the English language. (*Id.*) Her relevant past work experience was as a waitress, which the ALJ concluded was unskilled and not transferable due to the claimant's physical limitations. (*Id.*)

In light of these characteristics, the ALJ evaluated the claimant under Medical–Vocational Rule 202.10 of Table No. 2. Rule 202.10 applies to individuals who are "closely approaching advanced age"; who have limited or less education (at least literate and able to communicate English) and whose previous work experience is unskilled. Rule 202.10 directs a finding of not disabled for such individuals. Therefore, the ALJ concluded that the claimant was not disabled. The regulations define "closely approaching advanced age" as 50–54, and "advanced age" as 55 or older. *See* 20 C.F.R. Part 404, Subpart P, apps. 2, §§ 201.00(f), 201.00(g). Under Table No. 2, an individual who is of advanced age, has limited education, and unskilled previous work experience is conclusively disabled. *See* 20 C.F.R. Part 404, Subpart P, apps. 2, § 202.02. Consequently, the claimant in the present case would have been found to be disabled if she was 55, not 54, at the time she appeared before the ALJ.

Even when using the grids to make evaluations about a claimant's disability status, the regulations require that the Administration make "an individual assessment of each claimant's abilities and limitations." *Heckler v. Campbell*, 461 U.S. 458, 461 n. 1, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The regulations specifically state that age categories should not be applied "mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). In *Ford v. Heckler*, 572 F.Supp. 992 (E.D.N.C.1983), the court remanded a case because the Administration failed to consider that the claimant was 3 months shy of the next age group on the grid at the time the ALJ made his ruling, and just 15 days shy of this age when the Appeals Council rejected his claim. *Id.* at 994. The court concluded that the "troublesome problem" was the Administration's rote application of the regulations. *See id.* The "rules require that an ALJ not apply the age categories mechanically in a borderline situation." *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th cir.1983) (citing 20 C.F.R. § 404.1563(a)); *see also Kane v. Heckler*, 776 F.2d 1130, 1133 (3rd Cir.1985)(remanding a case so that the ALJ might properly apply the regulation requiring that the age categories used on the grids not be applied

mechanically); *Stamps v. Secretary of HHS*, 633 F.Supp. 101, 106 (E.D.Mich.1985)(finding that a claimant was in a borderline situation who was four months short of the age of 55 at the time of the hearing, only one month short of 55 when the ALJ issued his opinion and 55 years old when the decision became final).

In the present case, the ALJ strictly applied the age category to the claimant. The claimant was born on November 6, 1943. (Tr. at 77.) She is presently 56 years old. She was 54, just five months shy of 55, when the ALJ issued his decision on June 18, 1998, and was 55 ½ when the Appeals Council issued its decision on May 11, 1999. The ALJ correctly noted that strict application of the grid was limited by his conclusion that the claimant cannot perform a full range of light work. (Tr. at 18.) The ALJ noted that the claimant has "non-exertional limitations which narrow the range of work she is capably of performing." (*Id.*) However, the ALJ failed to sufficiently address the affect of the claimant's age on her placement in the grid nor did the ALJ address that at 54 the claimant was very close to 55. If the claimant was 55 at the time of the decision, the claimant would have been placed in a different category in the grid and in light of the claimant's other limitations, would have been found to be conclusively disabled. If ever there was a "borderline" situation, this is it. The ALJ mechanically applied the grid and this application is not supported by substantial evidence. Therefore, this case is remanded so that the ALJ may re-evaluate the claimant's residual work ability, placing her in the regulatory category of "advanced age".

Accordingly, it is ORDERED this 13th day of March, 2000, that the Commissioner's motion for summary judgment is denied, and the claimant's motion for summary judgment is granted.